USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6/17/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                    :

MARK SULLIVAN,                          :
                                      :

                        Plaintiff,  :                            1:23-cv-5194-GHW
                                      :

              -against-         :        MEMORANDUM OPINION &
                                      :              ORDER

PETER GELB, MARCIA SELLS,    :
STEPHANIE BASTA, *and* SAMUEL  :
WHEELER,                          :
                                      :

                        Defendants. :
-------------------------------------------------------------X
GREGORY H. WOODS, United States District Judge:

      Mark Sullivan, a former chorus member at the Metropolitan Opera (the "Met"), sued myriad

Met representatives and his union representative after Defendants instituted COVID Policies[1] that

required, among other things, that Met employees become vaccinated against COVID-19 or face

disciplinary action.  Because Plaintiff failed to timely file his lawsuit in accordance with the

applicable statute of limitations, and because he failed to adequately state a claim for assault, the

Court dismissed Plaintiff's claims with prejudice.  Mr. Sullivan now moves for reconsideration of

that decision.  Because his motion fails to identify controlling decisions or data that the Court

overlooked that might reasonably be expected to alter its conclusions, and because many of his

arguments represent mere attempts to relitigate issues that the Court resolved in its original opinion,

Plaintiff's motion to alter the judgment is DENIED.

## I.      BACKGROUND

      The Court refers to its original opinion for a comprehensive description of the facts of this

case.  In short, the Court issued a memorandum opinion and order on April 25, 2024, as amended

---

[1] Capitalized terms utilized herein take on the meanings prescribed in the Court's opinion, Dkt. No. 114.

on May 24, 2024. Dkt. Nos. 105 (original), 114 (amended, referred to in this order as the "Opinion"). The order granted Defendants' motions to dismiss Plaintiff's first amended complaint because Mr. Sullivan failed to timely file his "hybrid" lawsuit, which alleged breach of the duty of fair representation ("DFR") and violations of section 301 of the Labor Management Relations Act ("LMRA").

The Court began its analysis by concluding that Mr. Sullivan's suit is a hybrid section 301/DFR action because it alleged "violations on the part of" both the union and the employer. *See* Opinion at 16 (quoting *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113–14 (2d Cir. 1997), and citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983); *Vaca v. Sipes*, 386 U.S. 171, 184–86 (1967)). "The limitations period on this 'hybrid § 301/DFR' action is six months, which begins to run when the employee knew or should have known of the breach of the duty of fair representation." *White*, 128 F.3d at 114 (citing *DelCostello*, 462 U.S. at 169; *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995); *King v. New York Tel. Co.*, 785 F.2d 31, 33 (2d Cir. 1986)). The Court concluded that Mr. Sullivan failed to comply with the statute of limitations.

In reaching this conclusion, the Court first found that many of Plaintiff's state-law causes of actions were preempted by section 301 of the LMRA. *See* Opinion at 17–28 (explaining why Plaintiff's causes of action for (1) tortious interference with contractual relations, (2) breach of the implied covenant of good faith and fair dealing, (3) negligence and negligent misrepresentation, (4) fraud, and (5) concerted-action liability are preempted by section 301 of the LMRA). And while the Court concluded that it need not analyze whether Mr. Sullivan's claim for assault is preempted by section 301, the Court found that regardless, this claim was inadequately pleaded under Rule 12(b)(6). *See id.* at 28–29.

2

As for Plaintiff's DFR Claims, the Court concluded that they must be dismissed because first, a DFR claim could not be properly asserted against Samuel Wheeler, as "[t]he Supreme Court has long held that 'union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process," *see id.* at 31–32 (quoting *Morris v. Loc. 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999)) (internal quotation marks and other citations omitted); and second, even if Mr. Sullivan brought suit against the union itself, AGMA, his DFR Claims would nonetheless fail for failure to comply with the statute of limitations, *see id.* at 32–33. This is because "[t]he limitations period on this 'hybrid § 301/DFR' action is six months, which begins to run when the employee knew or should have known of the breach of the duty of fair representation." *See id.* at 32 (quoting *White*, 128 F.3d at 114) (internal quotation marks and other citations omitted). And here, the Court found that the statute of limitations for Mr. Sullivan's LMRA claims and DFR Claims began to run no later than October 5, 2022 because Plaintiff allegedly knew of Mr. Wheeler's involvement in negotiations of the COVID Policies by that date. *See id.* at 32–33 (citing Dkt. No. 56 (the "FAC") ¶ 39). Because Mr. Sullivan waited until May 7, 2023 to file his claims in the Supreme Court of New York, his claims were untimely. *See id.* at 33 (citing Dkt. No. 1-1).

Last, the Court undertook an extensive analysis on equitable tolling and concluded that tolling was inappropriate in these circumstances. *See id.* at 34–37. And because Mr. Sullivan failed to comply with the six-month statute of limitations applicable for his hybrid section 301/DFR claims, the Court concluded that any attempt to replead those claims would be futile. The Court also found that any attempt to replead the assault claim would be futile because Plaintiff failed to allege facts that are in any way adequate to plead a viable assault claim under New York law. *See id.* at 37.

## II.      PROCEDURAL HISTORY

The Court refers the reader to the Opinion for a detailed description of Plaintiff's complaint.
The first amended complaint was filed on September 1, 2023 and, in short, it brought claims against
Defendants for (1) tortious interference with contractual relations, by all the defendants, FAC
¶¶ 81–121; (2) breach of implied covenant of good faith and fair dealing, by Peter Gelb and Mr.
Wheeler, *id.* ¶¶ 122–64; (3) "negligent misrepresentation causing harm," by Marcia Sells, *id.* ¶¶ 165–
245, and by Mr. Gelb, *id.* ¶¶ 246–85; (4) negligence by the Met Defendants, *id.* ¶¶ 286–313; (5) fraud
by Mr. Wheeler, *id.* ¶¶ 314–61, and by the Met Defendants, *id.* ¶¶ 362–451; (6) assault by the Met
Defendants, *id.* ¶¶ 452–89; and (7) "concert of action" by all of the defendants, *id.* ¶¶ 490–522,
which the Court construed as a "concerted-action" liability claim under New York law, *see* Opinion
at 27.  Plaintiff also asserted violations of myriad New York state and municipal laws.  *See* FAC
¶¶ 52–58, 92, 106, 111, 290–91, 296, 301–03, 354, 380, 444–45, 492.  In addition, Plaintiff asserted a
claim against Mr. Wheeler for "breach[] [of] his duty of fair representation."  *Id.* ¶¶ 95, 138.

Defendants moved to dismiss the FAC on October 20, 2023.  *See* Dkt. Nos. 86, 90; Dkt. No.
87; Dkt. No. 91.  On November 17, 2023, Plaintiff filed his oppositions.  Dkt. Nos. 98, 99.  On
December 1, 2023, Defendants filed their replies.  Dkt. Nos. 102, 103.

The Court issued its opinion on April 25, 2024, granting Defendants' motions to dismiss the
complaint because Mr. Sullivan failed to timely file his "hybrid" lawsuit—which alleged breach of
the duty of fair representation and violations of section 301 of the Labor Management Relations
Act.  *See* Dkt. No. 105.  The Court issued an amended opinion on May 23, 2024, in response to Mr.
Sullivan's same-day motion to correct a single typographical error in the opinion under Federal Rule
of Civil Procedure 60(a).  *See* Dkt. Nos. 107–09, 113–14.

On May 23, 2024, Plaintiff filed a motion for reconsideration under Federal Rule of Civil
Procedure 59(e), asking the Court "to enter an Order to alter the judgment of its Order dated April

25, 2024 . . . , vacate that judgment, and remand this case to the New York State Supreme Court for further proceedings . . . ." Dkt. No. 110. In sum, Plaintiff argues that the Opinion in its "entirety . . . is predicated upon the presumption that the Metropolitan Opera's Covid Policy . . . is a legal part of [Plaintiff's] Collective Bargaining Agreement and therefore requires interpretation of that work contract." Dkt. No. 111 (the "Mem.") at 1. He argues that this is improper because the COVID Policies, "with terms and conditions that extend outside the workplace through the permanent alteration of claimant's bodily property and without express consent," could not "possibly be a legal and lawful part of a CBA, a contract which, by definition, is confined to terms and conditions of the workplace only." *Id.* at 2. Plaintiff argues that "[b]y ruling that the CBA must be interpreted in this matter, this Court concludes that the Met's Covid policy is a legal and lawful part of the CBA without providing conclusions of law to support that opinion. Thus, this Court rules that a CBA may govern employee conditions and property off the worksite without express consent or accommodation, and definitively changes contract law, ruling that a CBA is self-defining and self-limiting." *Id.* at 6. Plaintiff requests vacatur of the Court's order dismissing the FAC, and that "this case [be] remanded to New York State Supreme Court . . . ." *See id.*

Defendants filed their oppositions to Plaintiff's Rule 59(e) motion on June 6, 2024. Dkt. Nos. 116 ("Mr. Wheeler's Opp'n"), 117 (the "Met Defendants' Opp'n"). Defendants argued, in short, that "[b]ecause there is no legal principle that the Court overlooked, no change in the intervening law, no new evidence, and no other basis for the Court to reconsider its decision, Plaintiff's motion should be denied." Met Defendants' Opp'n at 1; *accord* Mr. Wheeler's Opp'n at 1 (arguing that Plaintiff "misconstrues the basis for the Court's dismissal of his state-law claims" and "identifies no controlling law or factual matters overlooked by the Court").

On June 13, 2024, Plaintiff filed his reply, arguing that "Defendants and this Court fail to apprehend the threshold question in this case," which Plaintiff defines as: "Can a Collective

Bargaining Agreement, a contract confined to the workplace, legally govern an employee's bodily property off the worksite without express consent?"  Dkt. No. 118 (the "Reply").  He argues that "Defendants have not shown how a CBA could authorize a policy with content that extends outside the workplace," *id.* at 2; that the Court "overlooked" or failed to "properly consider[] . . . (a) [that v]accines permanently alter claimant's bodily property" and (b) that a "CBA cannot govern matters off the worksite," *id.* at 4; and that "DFR immunity does not shield Wheeler from his ultra vires actions," *id.* at 6.  In addition, Plaintiff's reply cites to a recent constitutional law case from the Ninth Circuit Court of Appeals, which Plaintiff argues constitutes "intervening case law [that] applies to [the] threshold question."  *See id.* at 5–6.

## III.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 59(e) and Southern District of New York Local Rule 6.3

Under Federal Rule of Civil Procedure 59(e), within 28 days of an entry of judgment, a party may file "[a] motion to alter or amend a judgment."  And Southern District of New York Local Rule 6.3 permits parties to, within 14 days of a court's order, file "a notice of motion for reconsideration or reargument" of that motion.  "The standards set forth in both Fed. R. Civ. P. 59(e) and Local Rule 6.3 are identical."  *In re New York Comm. Bancorp, Inc., Sec. Litig.*, 244 F.R.D. 156, 159 (E.D.N.Y. 2007).  To justify reconsideration, the moving party must be able "to point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bartlett v. Tribeca Lending Corp.*, No. 18-cv-10279, 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) (noting that a party moving for reconsideration of a previous order must demonstrate

that the Court overlooked "controlling law or factual matters" that had been previously put before it).

"A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258–59 (S.D.N.Y. 2009), because "reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009). "The Second Circuit has stated that '[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied.'" *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (quoting *Shrader*, 70 F.3d at 257) (alterations in original). Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound discretion of the district court.'" *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

### B. Standard of Review for *Pro Se* Litigants

Mr. Sullivan is proceeding pro se. Motions filed by pro se litigants are liberally construed and interpreted "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed pro se, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). However, "the liberal treatment afforded to *pro se* litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305,

310 (S.D.N.Y. 2014) ("[D]ismissal of a pro se complaint is nevertheless appropriate where a plaintiff

has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62,

65 (2d Cir. 1997))).

## IV.    DISCUSSION

None of Plaintiff's arguments justify reconsideration or amendment of the Court's Opinion.

Under either Local Rule 6.3 or Federal Rule 59(e), a party moving for reconsideration must be able

"to point to controlling decisions or data that the court overlooked—matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court" in order to justify

reconsideration. *Shrader*, 70 F.3d at 257.  That "standard" is "strict," so "reconsideration will

generally be denied." *Mahmud*, 496 F. Supp. 2d at 270 (quoting *Shrader*, 70 F.3d at 257).  Here, while

Plaintiff offers a litany of supposed errors or mistakes in the Court's Opinion, these arguments

amount to misunderstandings of the Court's Opinion, misapplications of law, or attempts to

"relitigate . . . already decided issue[s]," *Padilla*, 636 F. Supp. 2d at 258–59—none of which warrant

reconsideration.

### A.    The "Bodily Property," "Express Consent," and "Employer Overreach" Arguments

Plaintiff's arguments regarding his "bodily property," "express consent," and "employer

overreach" are attempts to relitigate decided issues and misconstrue the Court's conclusions.

Plaintiff first argues that the Opinion in its "entirety . . . is predicated upon the presumption that the

Metropolitan Opera's Covid Policy . . . is a legal part of [Plaintiff's] Collective Bargaining Agreement

and therefore requires interpretation of that work contract." Mem. at 1.  Plaintiff argues that the

Court failed to consider "how a policy with terms and conditions that extend outside the workplace

through the permanent alteration of [Plaintiff's] bodily property and without express consent could

possibly be a legal and lawful part of a CBA, a contract which, by definition, is confined to terms

and conditions of the workplace only." *Id.* at 1–2; *see also id.* at 2–4.  Plaintiff calls this a "novel or

complex issue" and argues that the Court did not "ma[k]e any attempt to address" it, nor did the Court, in his view, "consider[] the overarching issue of employer overreach . . . ." *Id.* at 2; *see also id.* at 3–5 (further articulating this concern); *id.* at 5 (citing 28 USC § 1367(c)(1)); *id.* (asserting that the Court "overlooked" the citations appearing in Dkt. No. 99 at 24–26). And Plaintiff argues that section 301 "cannot apply to matters outside of a contract" and that, as a result, the six-month limitations period "cannot apply to Sullivan's tort claims, this Court cannot maintain jurisdiction, must vacate the April 25, 2024 judgment, and remand this case to New York State Supreme Court." *Id.* at 2.

The Court considered these arguments and rightly rejected them as irrelevant to the Court's analysis of LMRA preemption or the assault claim. *See, e.g.*, Opinion at 7, 12, 29 (noting these arguments). As an initial matter, that a work contract may include some conditions of employment which incidentally affect an employee's life outside of the workplace is neither novel nor complex. Some contracts might require their employees to, for example, remain nearby after-hours for on-call work, be accessible by phone off the worksite, test negative for illicit substances, or—particularly in the entertainment industry—maintain their physical features in a particular way.[2] As noted in the Court's Opinion, generally "in New York, '[a]n employer has the right to terminate employment at will at any time and for any reason or no reason, except as that right may have been limited by express agreement with the employee or in a collective bargaining agreement of which the employee is a beneficiary.'" Opinion at 23 (quoting *O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 725 (1985)). Here, Plaintiff was presented options of complying with the COVID Policies, seeking an accommodation to the COVID Policies, accepting the offered alternative (here, an unpaid leave of absence), or terminating his employment relationship with the Met.

---

[2] For example, Plaintiff's own CBA permits termination on the grounds of vocal deterioration, without regard for whether the deterioration resulted from conduct on or off of the worksite.

Whether these options were properly presented or executed requires interpretation of Plaintiff's labor contract.[3]  *See, e.g.*, Opinion at 17 ("[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) (internal quotation marks omitted)).  And crucially, the question of LMRA preemption asks whether a plaintiff's claims are "inextricably intertwined with consideration of the terms of [a] labor contract."  *See* Opinion at 17–18 (quoting *Wall v. Constr. & Gen. Laborers' Union, Loc. 230*, 224 F.3d 168, 178 (2d Cir. 2000) (internal quotation marks and other citations omitted).  To be clear, Plaintiff's own argument regarding what a work contract can and cannot permissibly require of its employees requires the Court to interpret the contract at issue.  *See generally id.*; *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) (holding that "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement").  These arguments—far from saving Plaintiff's claims from preemption—underscore that preemption was warranted here.[4]  Fundamentally, the Court could not consider what Plaintiff describes as the "threshold question"—whether Defendants could permissibly impose a vaccination requirement as laid out in the COVID Policies pursuant to the CBA—without considering the terms of the CBA.

---

[3] And as Defendants correctly point out:  "The Court did not find that the Policy was part of the CBA, nor did the Court address the validity of the Policy or the Met and AGMA's authority to adopt the Policy."  Mr. Wheeler's Opp'n at 3.

[4] Nor do these arguments in any way alter the Court's consideration of the assault claim.  As explained in greater detail in the Opinion, "[e]ven when drawing all reasonable inferences in Mr. Sullivan's favor, the FAC supplies no allegations that the Met Defendants engaged in any 'menacing gesture or act,' to suggest any intent whatsoever of placing Mr. Sullivan 'in fear of imminent harmful or offensive contact.'"  As the Met Defendants correctly observe in their brief:  'what is at issue is the Met's [COVID P]olicy, not an attempt by the Met to wield a syringe and actually inject Plaintiff.'  Because Mr. Sullivan failed to adequately plead that the Met Defendants engaged in any conduct that 'intentiona[lly] plac[ed him] in fear of imminent harmful or offensive contact,' his claim for assault is dismissed."  Opinion at 28–29 (internal citations omitted).

That is why, in essence, the majority of Plaintiff's claims were preempted, the LMRA was implicated, and the Court undertook the statute-of-limitations analysis that it was required to undertake.

Plaintiff also argues that the Court "overlooked" "specific Federal Appeals Court and SCOTUS rulings" appearing at Dkt. No. 99 at "p. 24-26." Mem. at 5. This is incorrect. First, assuming that "p. 24-26" references ECF pagination rather than native pagination,[5] none of the cases cited alter the Court's conclusions in the Opinion. *Schmidt v. Ameritech Corp.*, 115 F.3d 501, 506 (7th Cir. 1997), and *Berda v. CBS Inc.*, 881 F.2d 20, 25 (3d Cir. 1989), are both out-of-circuit cases, dealing with entirely non-analogous circumstances, that are not binding on the Court.[6] And *Seabrook v. Jacobson* concerns supplemental jurisdiction—a legal issue distinct from that of LMRA preemption. *See* 153 F.3d 70 (2d Cir. 1998).[7]

Nor would the dicta cited from *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, which addressed the question of LMRA preemption in the context of an intentional infliction of emotional distress case, alter the Court's conclusions. *See* Dkt. No. 99 at 20 (citing *Farmer*, 430 U.S. 290, 302 (1977) ("[I]nflexible application of the doctrine [of preemption] is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and

---

[5] This page range appears at pages 19–21 in native pagination and substantively appears to be the section to which Plaintiff is referring. Plaintiff's Reply, too, refers to Dkt. No. 99, "p. 19-22." Reply at 4. Page 22 (native) of Dkt. No. 99 contains no citations to any federal appellate or U.S. Supreme Court caselaw.

[6] In *Schmidt*, the Seventh Circuit found that the plaintiff's "invasion of privacy" claims were "completely independent of the CBA" because the legal question was "whether [the defendant] ha[d] a duty to treat all residential customers similarly for purposes of" accessing its customers phone records, "or if its employees stand in a different position." 115 F.3d at 506. And *Berda* concerned a claim that the defendant's "pre-employment representation [to the plaintiff] that he would not be laid off constituted a term governing his employment with [the defendant] on which he relied and that [the defendant] breached that term by laying him off." 881 F.2d at 25. These allegations are far unlike the claims brought by Mr. Sullivan, which ask whether Defendants had the authority to promulgate and enforce the COVID Policies pursuant to the CBA, and whether the COVID Policies were valid given the negotiation process that led up to their enactment. *See generally* FAC.

[7] As Mr. Wheeler observes: "Sullivan's assertion that his First Amended Complaint presents a 'novel or complex issue' of State law' has no relevancy to the Court's findings. A determination as to whether a complaint presents a novel or complex issue of state law is relevant only to a court's assessment of whether to exercise supplemental jurisdiction. Here, the Court did not decline to exercise supplemental jurisdiction over Sullivan's state-law claims, but rather dismissed these claims as preempted." Mr. Wheeler's Mem. at 7 (citing 28 U.S.C. § 1367(c)(1)). This is correct. 28 U.S.C. § 1367(c)(1) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (1) the claim raises a novel or complex issue of State law . . . ." The law governing supplemental jurisdiction is distinct from that governing LMRA preemption.

the State's interest is one that does not threaten undue interference with the federal regulatory scheme.")).  Citing *Farmer*, Plaintiff argued that "[t]he novel question of whether New York State has an interest in protecting its citizens from potentially harmful permanent alteration of its citizens' bodily property through dangerous and unauthorized employer overreach outside of any workplace agreement, is not an issue for this court but rather state court."  *See* Dkt. No. 99 at 20–21.  "As the Met Defendants correctly observe in their brief:  'what is at issue is the Met's [COVID P]olicy, not an attempt by the Met to wield a syringe and actually inject Plaintiff.'"  Opinion at 29 (citation omitted).  The COVID Policies do not come within the ambit of the sort of conduct completed by *Farmer*—conduct that is "so outrageous that 'no reasonable man in a civilized society should be expected to endure it'" such that federal preemption is improper.  *See* 430 U.S. at 302.

Plaintiff's last citation in this section to "Federal Appeals Court and SCOTUS rulings," Mem. at 5, is to *National Federation of Independent Business v. Department of Labor, Occupational Safety & Health Administration*, 595 U.S. 109 (2022).  This case does not concern LMRA preemption at all and does not alter the Court's conclusions.

If Plaintiff was instead referring to the caselaw cited at pages 24–25 (native pagination) in Plaintiff's opposition memorandum at Dkt. No. 99, the Court did not overlook these, nor do these cases alter the Court's conclusions.  These New York state and federal cases stand for the proposition, generally, that courts often reference dictionaries to determine the plain and ordinary meaning of words in a contract.  *See Mazzola v. Cnty. of Suffolk*, 143 A.D.2d 734, 735 (2d Dep't 1988); *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011); *Everdry Mktg. & Mgmt., Inc. v. Delves & Giufre Enterprises, Inc.*, 319 F. Supp. 3d 626, 632 (W.D.N.Y. 2018).  Plaintiff asked the Court to take judicial notice of the dictionary definitions he supplied accompanying the motion to dismiss briefing.  *See* Dkt. No. 99 at 24.  But for the reasons explained in the Court's November 27, 2023 order, "[g]enerally, it is not necessary for courts to take judicial

notice of dictionary definitions, which are 'not the sort of materials for which judicial notice under Rule 201 is appropriate.'" Dkt. No. 101 at 3 (citations omitted). And although "the Court may reference dictionary definitions in its adjudication of the . . . motions to dismiss, . . . . it need not take judicial notice of any particular dictionary definition in resolving the motions to dismiss." *Id.* at 4 (citations omitted). In any case, none of these dictionary definitions would have altered the Court's conclusions in the Opinion; and the Court's order declining to take judicial notice of these opinions was issued over six months ago, making this reconsideration request untimely.

Last, Plaintiff's Reply cites to a recent case from the Ninth Circuit Court of Appeals, which Plaintiff additionally asks the Court to consider. *See* Reply at 1 & n.1 (citing *Health Freedom Def. Fund, Inc. v. Carvalho*, No. 22-55908, 2024 U.S. App. LEXIS 13910, at *12 (9th Cir. June 7, 2024)). This out-of-circuit, non-binding case does not concern LMRA preemption at all, and instead addressed the separate issue of whether a COVID-19 vaccination policy issued by the Los Angeles Unified School District, a state actor, "interfer[ed] with [Plaintiffs'] fundamental right to refuse medical treatment" as a matter of constitutional law. *Id.* at *8–9. Neither the Met Defendants nor Mr. Wheeler is alleged to be a state actor. Accordingly, constitutional claims such as the ones at issue in *Carvalho* are simply not applicable here. *See, e.g., DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 202 (1989) (explaining the state-actor doctrine).

### B. The "Exemption Versus Accommodation" Argument

Nor does Plaintiff's argument regarding the difference between the words "exemption" and "accommodation" justify reconsideration or alter the decision of the Court. Plaintiff argues that the Court "appears to equate 'exemption' and 'accommodation,'" and Plaintiff argues that "[a]n exemption can only apply to a contract where there exists a legally valid 'duty, liability, or other requirement.'" *See* Mem. at 4–5. He asserts that Defendants had to either "acquire express consent," which Plaintiff did not give, or "grant accommodations to employees who refuse" a policy

added to a CBA "that seeks to permanently alter an employee's bodily property outside the workplace." *See id.* Plaintiff argues that "interpretation of the CBA is not proper in this matter because express consent cannot legally be 'interpreted' into existence." *Id.* at 5. Accompanying his motion for reconsideration, Plaintiff submitted a declaration that attaches exhibits showing the definition of the words "apprehension," "exemption," "accommodation," and "express consent" from BLACK'S LAW DICTIONARY. *See* Dkt. No. 112.

This argument is unavailing. It, too, is "inextricably intertwined with consideration of the terms of [a] labor contract" such that LMRA preemption—for the reasons more fully articulated in the Court's opinion—applies to Plaintiff's claims. *See* Opinion at 17–18. Asking what duties any Defendant may have owed to Plaintiff requires interpretation of the CBA. "[T]he employer's duty to honor the collective bargaining agreement" is governed by Section 301 of the LMRA, "and the duty of fair representation is implied under the scheme of the National Labor Relations Act (the 'NLRA')." *White*, 128 F.3d 110, 113–14. Critically, as explained in the Opinion, "[t]he limitations period on this 'hybrid § 301/DFR' action is six months, which begins to run when the employee knew or should have known of the breach of the duty of fair representation." Opinion at 32–34 (quoting *White*, 128 F.3d at 114 (internal quotation marks omitted)).

Moreover, as for Plaintiff's negligence and negligent misrepresentation claims, the Court undertook an extensive analysis of any duties the Met Defendants may have owed to Plaintiff as alleged in the FAC, and concluded that "Mr. Sullivan fails to adequately plead that the Met Defendants owe him any duties beyond those prescribed by the CBA." *See* Opinion at 23–25. Specifically, he "'fail[ed] to provide any basis for the defendants to have a duty of care with respect to [his] termination' that goes beyond any duties prescribed by the CBA.' Thus, 'to allow the plaintiff to proceed with a negligent termination claim where the only possible basis for such a claim is the CBA 'would elevate form over substance and allow parties to evade the requirements of 301.'"

*Id.* at 25 (internal citations omitted).  Accordingly, the Court found that "Plaintiff's claims for negligence and negligent misrepresentation [were] preempted by section 301."  *Id.*

### C.  The "Ultra Vires" Argument

Nor are the Court's conclusions altered by Plaintiff's argument that "immunity under the Duty of Fair Representation does not protect defendant Wheeler from his *ultra vires* actions in creating an unconscionable covenant (the Policy) that seeks to permanently administer claimant's bodily property off the worksite."  *See* Reply at 2.  First, as the Court stated, "[i]n assessing whether Defendants breached any covenant of good faith and fair dealing implied in the CBA, the Court must analyze the contract itself."  Opinion at 22.  Second, as the Court explained more fully in its opinion, Plaintiff's "DFR Claims must be dismissed for several reasons.  First, any DFR claim cannot be asserted against Mr. Wheeler, as '[t]he Supreme Court has long held that 'union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process.' . . .  Second, even if Mr. Sullivan brought suit against AGMA, the DFR Claims would nonetheless fail for failure to comply with the statute of limitations."  Opinion at 31–32 (citations omitted).  Plaintiff's reconsideration arguments do not alter the Court's conclusions regarding his DFR Claims; they are merely an attempt "to relitigate an already decided issue."  *See Padilla*, 636 F. Supp. 2d at 258–59.

### D.  The Request to "Remand"

Nor has Mr. Sullivan proffered arguments justifying reconsideration of the Court's earlier decision to deny his motion to remand—an opinion that was issued on November 27, 2023.  *See* Dkt. No. 100.  First, any request to reconsider this decision is untimely.  *See* Local Rule 6.3 (providing that "a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion").  Second, as described above and detailed in full in the remand opinion, the

complaint raised a federal claim—breach of the DFR, which arises under the National Labor Relations Act of 1935, 29 U.S.C. § 151 *et seq.*, as amended in relevant part by section 301 of the Taft-Hartley Act of 1947, *id.* § 185.  *See generally* Dkt. No. 100; *id.* at 16 (concluding that "[b]ecause Mr. Sullivan's claim against Mr. Wheeler for breach of the duty of fair representation arises under federal labor law, it confers federal-question jurisdiction on this Court pursuant to 28 U.S.C. § 1331").

## V.    CONCLUSION

In essence, the Court did not "misapprehend[] the nature [of] Sullivan's claims," Mem. at 2; rather, Mr. Sullivan misunderstood the Court's conclusions and the governing legal framework.  To be clear, the Court did not rule on the "validity" of the Met's COVID Policies, or on Defendants' "authority" to promulgate or execute them.  This is because the majority of Mr. Sullivan's claims were preempted by the LMRA, and impermissibly pleaded outside the six-month statute of limitations for hybrid section 301/DFR claims; and Plaintiff failed to adequately plead his assault claim for the reasons explained in the Opinion.  Plaintiff has failed "to point to [any] controlling decisions or data that the court overlooked—matters . . . that might reasonably be expected to alter the conclusion reached by the court."  *See Shrader*, 70 F.3d at 257.

Accordingly, Plaintiff's motion for reconsideration is DENIED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 110.

SO ORDERED.

Dated:  June 17, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge